IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Gloria Bautista, ) | |
| ) | Civil Action No. 8:07-1287-HMH-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Clemson University, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This matter is before the court on the defendant's motion for summary judgment. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTS PRESENTED**

      In her complaint, the plaintiff alleges that the defendant discriminated against her on the basis of her race and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended. Upon this court's recommendation, on October 2, 2007, the Honorable Henry M. Herlong, Jr., United States District Judge, dismissed the plaintiff's harassment claims. On March 7, 2008, the defendant filed a motion for summary judgment on the plaintiff's remaining claims. On March 26, 2008, the plaintiff filed her opposition to the motion, and on April 7, 2008, the defendant filed a reply brief. The plaintiff then filed a motion to supplement her opposition to the motion for summary judgment, which was granted by this court. The plaintiff filed her supplemental brief on May 22, 2008, and the defendant filed its reply on June 2, 2008.

The plaintiff was hired as an Assistant Professor of Spanish in Clemson University's Languages Department in 1989. She was promoted to Associate Professor in 1993, given tenure in 1994, and promoted to full Professor in 1998.

It is undisputed that in December 2005 the plaintiff was absent from the university for the last week of classes and the week of exams. The plaintiff presented a scholarly paper to an international conference at RMIT University in Melbourne, Australia, on Wednesday and Thursday, December 7 and 8, 2005. The final examinations in her courses were scheduled for Monday, December 12, 2005. Prior to leaving for the conference, she had arranged for substitute instructors to meet the final class sessions to give details about the final examination and to administer the finals. The plaintiff admits that the substitutes were unknown to the department and that their qualifications were not verified by the University (pl. dep. 74-75).

The plaintiff mentioned verbally to the Spanish Coordinator, Dr. Sandy King, and to members of the Peer Evaluation Committee in an email dated November 23, 2005, that she would be at a conference the first week of December. The plaintiff did not complete the Authorization for Official Foreign Travel form or the departmental Request for Leave of Absence form, and she admits that such was a violation of the University's policies and procedures (pl. dep. 68-70, 76). The plaintiff admits that she did not notify her students, her college dean, or her department chair of her trip to Australia (pl. dep. 73-74).

While the plaintiff was gone, the father of one of the substitutes died suddenly, and his daughter, the planned substitute, left immediately for her home country. Accordingly, the planned substitute was unable to administer the final examination in two of the courses. The substitute for the other final exam performed as planned.

The plaintiff was in transit on the flight to Australia when the substitute failed to show, and she could not respond to her student's emailed questions until her arrival. Upon learning of the situation, the plaintiff's first response was to email her students a take-home examination. When it became apparent that some of the students had not received the emails, she offered to either give them their class average as the final grade or to administer a final examination to any who wished to take it upon her return. The plaintiff admits that this was a violation of the final examination policy in the University's

Undergraduate Announcements (pl. dep. 78). The plaintiff did not attempt to communicate with her administrative supervisors (pl. dep. 77-79, 86).

On Tuesday, December 13th, the day after the scheduled final examinations, Judy Melton, Senior Associate Dean for Academic Affairs of the College of Architecture, Arts and Humanities (which included the Department of Languages), received an email from Debbie Jackson, the Associate Provost for Academic Affairs (Melton dep. 23). The email included a copy of an email sent by one of the plaintiff's students wherein the student complained that the plaintiff had missed around 10 classes during the semester, that the plaintiff had not been seen for two weeks, that the plaintiff had emailed her students on December 8th saying that she was in Australia and would not be back for the final exam, and that the plaintiff had not lectured on three of the five pieces of literature required for the final. According to the student, the plaintiff's December 8th email said that she would send them a final exam on Tuesday to be finished by Friday, even though the course's exam was scheduled for Monday (def. m.s.j., ex. 2).

Dean Melton contacted Dr. Constancio Nakuma, then the Chair of the Department of Languages, and sent him the student's email (Melton dep. 23; Nakuma dep. 8-21). She also notified Jan Schach, Dean of the College of Architecture, Arts and Humanities, of the situation (Melton dep. 24-25; Schach dep. 8). After trying unsuccessfully to contact the plaintiff by telephone and email, Dr. Nakuma had an email sent to the plaintiff's students on December 14, 2005, asking the students to come talk to him about any concerns they might have (Nakuma dep. 9-10, 14). On December 15, 2005, Dr. Nakuma sent an email to Deans Schach and Melton summarizing information he obtained from six of the plaintiff's students (def. m.s.j., ex. 3). The six students told Dr. Nakuma the following:

- The plaintiff did not show up for class on Tuesday, December 6, and on Thursday, December 8.

- The plaintiff missed many classes during the semester.

- Students were used as substitute teachers during the plaintiff's absences, even though some of these students were currently enrolled in the class as students.

3

- Students waited in vain for the plaintiff on Tuesday, December 6, and Thursday, December 8, but the plaintiff did not send a substitute teacher.

- Students in two of the plaintiff's classes received an email from the plaintiff stating that she was in Australia.

- In the same email, the plaintiff claimed that she had sent them two questions for their final exam, but there was no email attachment.

- The plaintiff's email requested that the students write eight questions and answers covering material since their last test and send the questions to her by Monday. She would then extract five questions from the list to email to them on Tuesday as a take home final exam due to her by Friday.

- One student stated, "Dr. Bautista announced very high performance expectations at the beginning of the course but ended up not living up to those expectations herself. That was confusing. Our entire course grade will be based on a 40% attendance and two test grades worth 20% each."

- The plaintiff wrote to some students in Spanish 311, but not the entire class, telling them that the final exam would not be given and that their course grade would be their grade up to that point.

(Def. m.s.j., ex. 3).

On Friday, December 16th, Dean Schach submitted a request for the plaintiff's dismissal to President James F. Barker through the Provost, Doris R. Helms (def. m.s.j., ex. 4). In this document, Dean Schach requested the plaintiff's dismissal based on "abandonment of her job duties." Dean Schach stated as follows in the memorandum:

> Dr. Bautista has been absent from campus since December 6, 2005, in addition to missing ten additional class days from her course. . . . Dr. Bautista has neither requested nor received approved leave for these time periods. Documented evidence also substantiates Dr. Bautista's demonstrated and repeated pattern of dereliction of duties of a tenured faculty member extending back more than a decade. Her continued neglect of her job duties has brought irreparable harm to her students and the Department of Languages at Clemson University.

(Def. m.s.j., ex. 4). In making her recommendation, Dr. Schach also noted several other instances in the alleged "pattern of unprofessional conduct" including:

- A 2001 incident wherein Interim Chair Jose Caban reprimanded the plaintiff for posting flyers that indicated students could easily improve their grade point ratio by taking her Spanish film course.

4

- Two occasions in the late 1990s when the plaintiff was reprimanded by then Department Chair Sandy King for departing from Clemson significantly prior to the end of the semester and the final examination.

- A reprimand by Department Chair Jose Caban for suggesting to students in her Spanish 202 class that she would guarantee them a grade of "A" if they enrolled in her Maymester class.

- A 1994[1] reprimand by then Department Chair Judy Melton for hiring a substitute to teach the final two weeks of her summer school class and to grade the final examination and determine final grades for the class (*see* def. m.s.j., ex. 5).

- A 1991 reprimand from then Department Chair Judy Melton for missing a week of classes and not filling out the necessary leave forms (*see* def. m.s.j., ex. 7).

- The plaintiff's removal of reprimand documentation from her personnel file.

- The plaintiff's abandonment of her responsibility to the Department of Languages Peer Evaluation Committee.

(Def. m.s.j., ex. 4).

The Provost and the President approved Dean Schach's request for the plaintiff's dismissal on December 20, 2005 (def. m.s.j., ex. 8). By letter dated December 22, 2005, the plaintiff was notified that she was being dismissed from her position as Professor of Spanish on the grounds she abandoned her job in breach of University procedures (def. m.s.j., ex. 9). The plaintiff filed an internal grievance against Dean Schach, Dean Melton, and Dr. Nakuma. Following a hearing, the Faculty Senate Advisory Committee unanimously upheld the decision of the administration and recommended the plaintiff's dismissal on April 27, 2006 (def. m.s.j., ex. 11). The Provost, the President, and the Board

---

[1]Although Dean Schach's memorandum (def. m.s.j., ex. 4) indicates that this incident took place in 1994, the written reprimand (def. m.s.j., ex. 5) shows that the reprimand actually occurred on July 25, 1995. The reprimand shows that the plaintiff had left the country before the end of summer school without notifying her students, without notifying the department of her plans or of what arrangements had been made for her class, and without filling out the required leave form. The reprimand also indicates that the plaintiff had a substitute for the class for at least seven or eight sessions, that she did not give a final exam in her two summer school classes, and that she gave responsibility for the final disposition of grades to a young woman who had just finished her Spanish degree the semester before and who was not a Clemson University faculty member. According to the plaintiff's written response to the reprimand (def. m.s.j., ex. 6), she apologized to the new Department Chair, Sandy King, and assured him "that this situation will not happen again."

5

of Trustees upheld the plaintiff's dismissal, and the plaintiff's employment was terminated effective November 7, 2006.

The plaintiff disputes several of the instances noted in Dr. Schach's memorandum requesting her dismissal. Specifically, with regard to the 1991 reprimand for missing class without filling out travel forms, the plaintiff notes that the travel forms are required for travel outside the United States and its territories. Melton had written such a reprimand, but threw it out after the plaintiff pointed out that her trip had been to Puerto Rico, a United States possession. The plaintiff claims that later, without her knowledge, that memo was returned to her file (pl. dep. 81-83). The plaintiff also disputes that she abandoned her responsibility to the Department's Peer Evaluation Committee, noting that her September 2005 evaluation (pl. resp. m.s.j., ex. B) had commended her for service on that Committee and the fact that she had served on the Committee for several years (pl. dep. 160-61). The plaintiff also disputes that she was reprimanded by former Department Chair Jose Caban for guaranteeing students an "A" in a Maymester class and disputes the two reprimands from former Department Chair Sandy King. The plaintiff claims that while she may have had discussions with these former Chairs about certain subjects, she was not reprimanded. As Provost Helms testified, her office must be involved in deciding whether a reprimand can be placed in someone's file (Helms dep. 8). The plaintiff claims that did not happen in her case. Lastly, the plaintiff notes that the Grievance Committee found that the allegation that she removed a disciplinary action from her file was not supported (def. m.s.j., ex. 11).

The plaintiff claims that "[g]iven the history of conflict between Gloria Bautista and Judy Melton, a history that in Bautista's view was fueled by Melton's dislike of Hispanics, these overstatements and false representations are evidence of discrimination" (pl. resp. m.s.j 10) (internal citation omitted). In her deposition, the plaintiff testified that she felt Melton displayed "total disregard for Hispanics" and she felt Melton "zeroed in on making [her] life miserable" (pl. dep. 82).

6

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365

7

(4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff alleges discrimination based on her race (Hispanic) and/or national origin (Colombian) in violation of Title VII. Under the mixed-motive method of proving discrimination under Title VII, a plaintiff must present sufficient evidence, direct or circumstantial, that, despite the existence of legitimate, nondiscriminatory reasons for the adverse employment action, an illegal factor was a motivating factor in the decision. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284-86 (4th Cir.2004). As the plaintiff lacks sufficient evidence to proceed under mixed-motive analysis, the plaintiff may proceed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework. Under the burden-shifting framework set forth in *McDonnell Dougla*s, 411 U.S. at 802-804, the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in

8

original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

To establish a *prima facie* case of discrimination under Title VII, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See Bryant v. Bell Atlantic Maryland*, Inc., 288 F.3d 124, 133 (4th Cir. 2002). The defendant argues that the plaintiff cannot establish prongs two or four and therefore cannot establish a *prima facie* case of discrimination.

The defendant argues that, while the plaintiff was qualified for her position, she has not shown that her job performance was satisfactory. This court agrees. There is no dispute that the plaintiff left the country during the last week of classes and the week of finals; that she did not notify her students or the administration that she was leaving; that she did not fill out the required travel/leave forms; that she hired substitutes, who were unknown to and whose credentials were unverified by the University, to teach her classes and administer exams; that she did not contact the administration when she found out that one of the substitutes would not be able to cover two of her classes as planned; and that she attempted to reschedule and ultimately cancelled the final examinations. The evidence also shows that the plaintiff had been reprimanded for a similar situation in 1995 and that,

9

at that time, she had assured the Department Chair "that this situation will not happen again" (def. m.s.j., ex. 5, 6).

Even assuming that the plaintiff could establish that her job performance was satisfactory, the plaintiff cannot show that other members who are not members of the protected class were retained under apparently similar circumstances. In order to satisfy this prong, "[P]laintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Ward v. City of North Myrtle Beach*, 457 F. Supp.2d 625, 643 (D.S.C.2006) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992)).

The plaintiff argues that another faculty member in the Languages Department, Russell Willingham, repeatedly missed classes and failed to administer final examinations (pl. dep. 110-12; Melton dep. 65-73). Willingham was disciplined, but he was given three years to improve his performance before he was terminated as the result of an unsatisfactory post tenure review. The plaintiff argues that the "contrast between this three-year period of leniency and the haste to terminate Plaintiff is striking and its defeats any claim that the unfortunate events that disrupted the December 2005 examinations were cause for discharge" (pl. resp. m.s.j. 12). However, as argued by the defendant, the plaintiff has not produced sufficient proof that Willingham engaged in the same conduct as she did or that there were no mitigating circumstances to distinguish his conduct from the plaintiff's or the University's treatment of them for it. The plaintiff admitted in her deposition that she did not know whether Willingham was authorized to miss classes or whether or not he violated university policy (pl. dep. 109-113).

The plaintiff also contends that Joni Hurley, another professor in her department, also missed classes or cancelled exams and was not discharged. However, the only evidence regarding Hurley is submitted by way of an email list from the plaintiff to

10

her attorney (pl. resp. m.s.j., ex. L). In her deposition, the plaintiff could not give dates that Hurley allegedly missed classes, and she admitted that she did not know whether Hurley had permission to miss classes or if she went through proper procedures to be out of class (pl. dep. 108-111). Accordingly, the plaintiff has not presented admissible evidence that Hurley engaged in the same conduct as she did without such mitigating circumstances to distinguish her conduct or the University's treatment of them for it.

The plaintiff argues that the Department of Languages has had a relaxed attitude toward others who failed to fill out foreign travel documents (pl. resp. m.s.j. 12-13). In support of her position, the plaintiff submitted an email sent to faculty members traveling during the summer of 2007. The faculty members were told to submit "Authorization for Foreign Travel" forms if they were planning to be out of the country for the summer. The faculty was told if they had already left the country, they could send the information via email (pl. resp. m.s.j., ex. I). Further, Department Chair Constancio Nakuma stated in his deposition that he was not sure what the rules were about the form (Nakuma dep. 31).

The plaintiff also names two other professors in her response to the motion for summary judgment and argues that the defendant "tolerated conduct that was much more of a fundamental violation of professional behavior when it was engaged in by non-Hispanics" (pl. resp. m.s.j. 14). However, as argued by the defendant, the conduct allegedly engaged in by these two professors, an affair with a student and an arrest for assault and battery, is clearly not the same as that engaged in by the plaintiff, and thus these professors are not valid comparisons.

In her supplemental response to the motion for summary judgment, the plaintiff submitted a travel form that Clemson President Barker did not complete until five days after returning from a trip to Europe (pl. supp. resp. to m.s.j., ex. C; Troutman dep. 16-18). As argued by the defendant, President Barker was in no way "similarly situated" to the plaintiff. The President's main responsibility was not to teach classes, and there is no evidence he missed any classes or disrupted exams. Further, the plaintiff's failure to fill out

the forms was only one of several reasons for her dismissal, and the plaintiff had previously been warned about similar conduct. Also, the appropriate personnel had knowledge of the President's travel plans and had his contact information.

The plaintiff also submitted evidence regarding the University's discipline of two non-Hispanic track coaches (C. Eugene Troutman, III dep. 18-27; pl. supp. resp. to m.s.j., ex. D, E, F). Again, these employees were in no way "similarly situated" to the plaintiff. They are not professors, they reported to a different supervisor than the plaintiff, and they did not engage in the same conduct as the plaintiff.

Even assuming the plaintiff could establish a *prima facie* case, the defendant has come forward with a legitimate, non-discriminatory reason for her dismissal. This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Accordingly, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. The plaintiff has failed to meet this burden. The plaintiff argues in her opposition to the motion for summary judgment that "[g]iven the history of conflict between Gloria Bautista and Judy Melton, a history that in Bautista's view was fueled by Melton's dislike of Hispanics, these overstatements and false representations [in Dean Schach's memorandum requesting the plaintiff's dismissal] are evidence of discrimination" (pl. resp. m.s.j. 10) (internal citation omitted). The plaintiff, however, presented absolutely *no* evidence supporting her claim of animus against Hispanics in the Languages Department and, particularly, against herself.

The plaintiff argues as follows in response to the motion for summary judgment:

> Defendant's motion is based entirely on its contention that the termination of Plaintiff's employment as a tenured full professor is justified by the events surrounding final examinations in two of her classes in December 2005. Plaintiff, of course, contends that those events do not rise to the level of cause for termination, that other, non-Hispanic professors have not been terminated for similar conduct (and for conduct that presents a more compelling case for termination) and that Defendant's

12

> motive for terminating her was unlawful discrimination. Defendant does not contest any other aspect of Plaintiff's claim. As a result, in considering this motion it must be assumed that Plaintiff will prove all other aspects of her case and would be entitled to a judgment if Defendant's proof on the one aspect of the case fails.
>
> Of course, Plaintiff recognizes that the filing of this motion on such a limited argument does not relieve her of the obligation of proving all aspects of her case at trial.
>
> Plaintiff has pled facts, which if found to be true, would support a factual finding that discriminatory intent existed in the Languages department of Clemson University where Plaintiff was employed. This response presents, in summary fashion when possible, a brief statement of that evidence. However, those allegations are not contested in this motion and the Court must evaluate Defendant's claims as if discriminatory intent has been proven.

(Pl. resp. m.s.j. 1-2).

Under Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Further, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed.R.Civ.P. 56(c), (e)(2).

"Regardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'"  *Hill v. Lockheed Martin Logistics Management, Inc.*,

354 F.3d 277, 286 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

Here, the defendant has come forward with evidence in support of its motion for summary judgment showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The defendant argues and has presented evidence that the plaintiff cannot meet two of the elements of her *prima facie* case. The defendant has come forward with a legitimate non-discriminatory reason for the plaintiff's dismissal, and thus the plaintiff has the burden of showing the reason was a pretext to mask unlawful discrimination. The plaintiff has failed to present evidence that she was the victim of intentional discrimination. Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

September 19, 2008

Greenville, South Carolina